IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 13-63 |
| | ) | |
| RITCHIE D. BENJAMIN, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

On May 23, 2013, defendant Ritchie D. Benjamin ("defendant") filed a motion for review of the pretrial detention order issued by a magistrate judge pursuant to 18 U.S.C. § 3145(b). (ECF No. 55.) After a de novo review of the proceedings before the magistrate judge, as well as a review of the pleadings and briefs in this case, a pretrial services report, and the arguments of counsel, this court denied defendant's motion and ordered that defendant be detained without bond pending trial. This Memorandum Opinion and Order sets forth the reasons for the court's decision, which were detailed on the record.

**I.     Background**

    **A.     Procedural History**

On April 9, 2013, a grand jury returned a superseding indictment at Criminal No. 13-63 charging defendant in counts 1, 2, 3 and 5 with the following offenses: a) conspiracy to commit bank robbery and armed bank robbery in violation of 18 U.S.C. § 371 (count 1); b) bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2 (count 2); c) armed bank robbery in violation of 18 U.S.C. §§ 2113(d) and 2 (count 3); and d) using and carrying a firearm in and in relation to a crime of violence, and/or possessing a firearm in furtherance thereof in violation of 18 U.S.C. §§

924(c)(1)(A)(ii) and 2 (count 5). (ECF No. 21.) The offense at count 1 carries a maximum term of imprisonment of not more than five years; the offense at count 2 carries a maximum term of imprisonment of not more than twenty years; the offense at count 3 carries a maximum term of imprisonment of not more than twenty-five years; and the offense at count 5 carries a minimum consecutive term of imprisonment of not less than seven years to a maximum of life imprisonment. (ECF No. 22.)

A detention hearing was held on May 14, 2013. At the hearing, the magistrate judge determined by clear and convincing evidence that defendant posed a risk of danger to the community and entered an order of detention for defendant (ECF No. 48) pending trial. After defendant moved for review of the order of detention, this court held a de novo hearing on June 10, 2013. After reviewing the transcript of the May 14, 2013 detention hearing, and taking into consideration the arguments made at the June 10, 2013 hearing, the court denied defendant's request for bond.

### B. Offense History

At the detention hearing before the magistrate judge, the government proffered evidence and entered several exhibits without objection, including the following: a) an affidavit executed by Federal Bureau of Investigation ("FBI") Special Agent Michael Craig Evans seeking a search warrant to obtain a sample of defendant's deoxyribonucleic acid ("DNA") (Exhibit 1); b) an evidence log for evidence recovered from the getaway vehicle used in the robbery (Exhibit 2); c) an FBI laboratory report on defendant's DNA (Exhibit 3); d) a North Versailles Township Police Department incident report (Exhibit 4); e) a Plum Borough Police Department incident report (Exhibit 5); and f) a Penn Hills Police Department incident report (Exhibit 6). Defendant testified

at the detention hearing before the magistrate judge, as did his mother, Antoinette Zanders ("Ms. Zanders"). Based upon these sources, the following factual background was developed.

Special Agent Evans's affidavit indicates that on Tuesday, December 18, 2012, at approximately 3:50 p.m., the Huntington National Bank (the "Huntington bank") located at 3576 Sheridan Avenue, Finleyville, Pennsylvania was robbed by two armed black males. (Aff. in Supp. of Search Warrant (ECF No. 60 Ex. 1) ¶ 4.) The men entered the bank and aimed their firearms at the tellers, demanding money from their drawers. (Id.) The men ordered the tellers not to press the alarm, threatening to shoot them if they did. (Id.) One of the suspects jumped over the counter and emptied a teller drawer. (Id.) Security cameras in the bank captured images of the suspects, revealing that they were wearing sunglasses, masks, gloves, and hats. (Id.)

The suspects fled the scene in a stolen Ford Escape sport utility vehicle, hitting a curb in the parking lot as they fled. (Id. ¶ 5.) The suspects abandoned the vehicle during their flight. (Id.) The police located the abandoned getaway vehicle and recovered the following items: one BB gun and one loaded .40 caliber handgun; the majority of the stolen money (most damaged by an exploding dye pack); and most of the items used to conceal the suspects during the robbery including sunglasses, gloves, hats, and a mask. (Id. ¶ 6.) DNA samples recovered from a gray cap and a dust mask found in the getaway vehicle (and seen in surveillance footage being worn by one of the suspects during the robbery) matched defendant's DNA. (5/14/2013 Detention Hr'g at 4-5; ECF No. 60 Ex. 3.) The affidavit in support of the search warrant indicated that defendant was in the area of the Huntington bank during the time of the robbery based upon cell site data obtained from defendant's cellular telephone provider. (ECF No. 60 Ex. 1 ¶ 10.)

The government proffered evidence at the detention hearing before the magistrate judge with respect to an incident report prepared by the North Versailles Police Department dated October 12, 2012, as follows:

> MS. KING: . . . So, basically, the police report outlines the fact that a victim called the North Versailles Police Department, called 911 and stated that on October 12 of 2012, she was driving a car with a friend and had pulled into an apartment complex and looked in her rear view mirror and saw the defendant in a car behind her blocking her in, so she was not able to pull the car out.
> She told the officers the defendant exited his car, proceeded to kick and punch her car and was threatening he was going to kill her for three to five minutes; and he picked up a large rock and began throwing it at her vehicle over and over again.
> The windshield was cracked. While she was in the car, she called 911. The defendant realized she called 911 and got in his car and fled. He was arrested later for three charges and that is currently pending trial in state court.

(5/14/2013 Detention Hr'g at 6; ECF No. 60 Ex. 4.) The government also proffered evidence with respect to defendant's arrest on October 19, 2012 for driving under the influence ("DUI"). (5/14/2013 Detention Hr'g at 6; ECF No. 60 Ex. 5.) The government proffered evidence showing that defendant was on pretrial release for the DUI offense at the time he allegedly committed the instant offenses. (Id.) Defendant confirmed that he was on bond for the October 12, 2012 offenses and the DUI offense at the time of the May 14, 2013 detention hearing. (5/14/2013 Detention Hr'g at 9.)

The government proffered evidence about an incident that occurred on May 31, 2010 that resulted in charges that were later withdrawn, but which involved the same victim as the October 12, 2012 offense. (5/14/2013 Detention Hr'g at 7.) The government proffered:

> . . . basically what happened here was the victim stated that she was at her friend's house and she received a text message from the defendant. The defendant wanted to meet with her. She agreed and told him where she was.
> He arrived. It was raining outside. She entered his car to talk with him. They got into an argument. She tried to leave the car. He grabbed her around the shoulders and neck and restrained her in the car and punched her four times in the face with a closed fist.

4

She was unable to escape the car. He exited the car and tried to push her back in the car and she escaped. She was able to call 911 and when the officer arrived, the defendant was gone but the officer noted that the victim had a large swollen lip and a dime-size bruise on the inside of her lip.

(Id.)

### C. Defendant's Personal Background[1]

According to the report from the United States Probation and Pretrial Services Office, defendant has close family ties in the Pittsburgh area. His mother, father, and three of four maternal half-siblings all reside in the Pittsburgh area, and defendant maintains a good relationship with his entire family. Defendant is a lifelong resident of the Western District of Pennsylvania, and has been living with his mother for the two months prior to his detention. The Pretrial Services Office also reports that defendant does not have an extensive employment history. He has been supported by his mother since 2008, and was employed at various times, holding jobs for six months or less, between 2006 and 2008.

Defendant's mother testified at the May 14, 2013 hearing and stated that she was willing to have him reside with her pending trial. (5/14/2013 Detention Hr'g at 15.) Ms. Zanders testified that defendant was "a good son," his family supports him, and they "strive to encourage him to do the right thing." (Id. at 14-15.)

Defendant has a criminal record, including adjudications as early as age 15 and multiple arrests. Defendant admitted to the Pretrial Services Office that he has a history of marijuana use, and indicated that he "experimented with Ecstasy as a juvenile." Defendant has pending state criminal cases for DUI, possession of marijuana, simple assault, propelling a missile into a vehicle, terroristic threats with intent to terrorize another, recklessly endangering another person, and criminal mischief.

---

[1] Defendant's personal background information was obtained from the Pretrial Services Report and Memorandum, dated April 25, 2013.

5

## II. Standard of Review

The court's standard of review of a magistrate judge's denial of pretrial detention is de novo. United States v. Delker, 757 F.2d 1390, 1394 (3d Cir.1985).

## III. Discussion

The structured system of the Bail Reform Act, 18 U.S.C. § 3141 et seq., regarding the release or detention of a defendant before trial seeks to ensure that the interests of the defendant and the public are carefully considered and contemplated before release or detention is ordered. See United States v. Lemos, 876 F.Supp. 58, 59 (D.N.J.1995). The court is charged with determining whether there exists "any condition or combination of conditions set forth in [18 U.S.C. § 3142(c)] that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community...." 18 U.S.C. § 3142(f); see Lemos, 876 F.Supp. at 59 (stating that "[a] condition precedent to detention without bail under subsection (e) is that a hearing be held as provided in subsection (f).").

Section 3142(c)(1)(B) of the Bail Reform Act sets forth a nonexclusive list of conditions that a court may impose upon granting a defendant's motion for pretrial release. If no sufficient condition or combination of conditions exists, however, the court may order that a defendant be detained without bail pending trial.

### A. Rebuttable Presumption

Section 3142(e) of the Bail Reform Act provides, in pertinent part:

> If, after a hearing pursuant to the provisions of subsection (f), . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial.

18 U.S.C. § 3142(e).

In this case, a rebuttable presumption applies that no conditions or combinations of conditions will reasonably assure the safety of the community. Section 3142(e)(3) provides:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . (B) an offense under section 924(c) . . . of this title.

18 U.S.C. § 3142(e)(3)(B).

Defense counsel conceded at the detention hearing that the government is "entitled to notice of presumption" in the present case. (5/14/2013 Detention Hr'g at 17.) The grand jury returned an indictment charging defendant with, inter alia, carrying and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), 2. Thus, subject to rebuttal by defendant, it is "presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. . . ." 18 U.S.C. § 3142(e).

**B. The § 3142(g) factors**

A defendant may offer evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of the community if defendant is released pending trial. A defendant must produce only "some credible evidence" to rebut the presumption set forth in § 3142(e). United States v. Chagra, 850 F. Supp. 354, 357 (W.D. Pa. 1994) (citing United States v. Carbone, 793 F.2d 559, 560 (3d Cir. 1986)). The quantum of evidence required to rebut the presumption is not high; rather, the defendant need only come forward with credible evidence conflicting with the presumption. Id. When a defendant produces conflicting evidence the presumption, however, does not disappear. The rebutted

7

presumption retains evidentiary weight.  See Carbone, 793 F.2d at 560-61; see also United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991); United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam).

In producing evidence to rebut the presumption, a defendant looks to the four factors set forth in § 3142(g) which the court must consider in determining whether pretrial detention is warranted.  See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (to determine whether the presumption of dangerousness has been rebutted, the court should consider the factors set forth in § 3142(g)).   The four factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

The court concludes that defendant failed to rebut the presumption that no condition or combination of conditions would reasonably ensure the safety of the community if he is released, and even if he had rebutted the presumption, the government, by clear and convincing evidence, persuaded the court that no condition or combination of conditions would reasonably ensure the safety of the community if defendant was to be released. If the presumption is rebutted, the facts employed to support a detention must "be supported by clear and convincing evidence." 18 U.S.C. § 3142(f); see United States v. Perry, 788 F.2d 100, 115 (3d Cir. 1986) ("The clear and convincing standard does not even operate until the defendant has come forward with some evidence of lack of dangerousness.").

Applying section 3142(g)'s factors to the instant case, the court first concludes that the defendant was indicted for several very serious offenses, including carrying and brandishing a firearm in the course of committing a crime of violence. A violation of § 924(c)(1)(A)(ii) carries a mandatory consecutive minimum term of imprisonment of seven years, to a maximum of life. Defendant is also charged with committing armed bank robbery, which carries a maximum term of imprisonment of twenty-five years. The seriousness of these offenses weighs against a finding that the presumption is rebutted.

Second, in considering the weight of the evidence against defendant, the court examined all the evidence presented at the hearings, including the evidence outlined above in the background section. Based upon that review, the court concludes that the weight of the evidence against defendant as presented by the government is significant. The government produced DNA evidence linking defendant to a cap worn by one of the suspects during the robbery, and linking defendant to the getaway vehicle used in the robbery. Cell site data also linked defendant to the

area of the Huntington bank at the time of the robbery. In sum, the weight of the evidence is strongly against defendant.

Third, the history and characteristics evidence proffered by defendant failed to rebut the presumption because it only related to the risk of flight, not the risk of danger to the community. The evidence showed that defendant currently has no job, has been living with his mother, and has been supported by her since 2008. Defendant's lack of a job and continuing to reside in the same house he lived in at the time of the instant offense weigh against granting pretrial release. Defendant admitted to a history of drug use including marijuana and experimenting with ecstasy. As acknowledged by the magistrate judge, defendant has a lengthy criminal history, going back to age fifteen. The evidence presented by the government shows that defendant is alleged to have committed the present crime while on release pending trial in other state proceedings that involve multiple charged offenses. Although defendant's mother said that she would continue to house him and insure that he did not flee, defendant adduced no evidence to rebut the presumption that he poses a risk of danger to the community.

Finally, the danger present in this case is that if released the defendant will engage in further violent behavior. As noted above, defendant is charged in this case with a serious firearm offense and armed bank robbery. Defendant has also been involved in at least two domestic violence situations in the past, based upon the evidence proffered by the government. Failure to detain defendant pending trial in the present case poses the acute risk that he will continue to engage in violent behavior. In light of defendant's background -- most significantly his past history of violence -- and since the weight of the evidence weighs heavily against defendant, this court cannot conclude that any condition or set of conditions, if imposed, would reasonably assure the safety of the community.

Here, the evidence adduced by the defendant to rebut the presumption of danger was insufficient to satisfy his burden since it only addressed the potential risk of flight. Even if defendant had rebutted the § 3142(e) presumption, this court finds after considering the record as a whole that there is no condition or set of conditions which would reasonably assure that defendant would not engage in drug trafficking on release. In light of defendant's violent background and the presumption retaining evidentiary weight, <u>Carbone</u>, 793 F.3d at 560-61, this court cannot conclude that any condition or set of conditions, if imposed, would reasonably assure the safety of the community if defendant was released pending trial.

**IV.    <u>Order</u>**

THEREFORE, this 19th day of June, 2013, IT IS HEREBY ORDERED that the defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, to persons awaiting or serving sentences or being held in custody pending appeal.

IT IS FURTHER ORDERED that defendant shall be afforded reasonable opportunity for private consultation with his attorney.

IT IS FINALLY ORDERED that, upon order of the court or upon request of an attorney for the government, a person in charge of the correctional facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

/s/ Joy Flowers Conti<br>Joy Flowers Conti<br>United States District Judge

cc:  Counsel of Record